**IN RE: Terri Denise STATEN, Debtor**

**Pikco Finance, Inc., Creditor/Plaintiff**

**v.**

**Terri Denise Staten, Debtor/Defendant**

**CASE NO. 15–50355–KMS
ADV. NO. 15–06017–KMS**

United States Bankruptcy Court,
S.D. Mississippi.

Signed September 16, 2016

Stacey Moore Buchanan, John S. Simpson, Simpson Law Firm, P. A., Ridgeland, MS, for Plaintiff.

Tylvester O.(J) Goss, Goss & Williams, Jackson, MS, for Defendant.

### FINAL JUDGMENT AND ORDER AWARDING ATTORNEY'S FEES

Judge Katharine M. Samson, United States Bankruptcy Judge

This matter is before the Court on the Application in Support of Request for At-

torneys Fees (Adv. Dkt. No. 20), filed by Pikco Finance, Inc. ("Pikco"); the Response to Application in Support of Request for Attorneys Fees (Adv. Dkt. No. 21), filed by Terri Denise Staten; the Rebuttal to Debtor's Response (Adv. Dkt. No. 25), filed by Pikco; and the Response to Plaintiff's Rebuttal (Adv. Dkt. No. 27) filed by Staten. On March 15, 2016, the parties stated on the record at a telephonic hearing that they had agreed to a nondischargeable judgment in the amount of $1,347.90 on the underlying debt but left the amount of attorney's fees to the Court's determination. Adv. Dkt. No. 31. Having considered the fee itemization submitted and the objections thereto, the Court finds that Pikco should be awarded attorney's fees and costs in the amount of $1,655.00.[1]

### I. Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (*I*), and (O).

### II. Findings of Fact

Pikco and Staten agreed to a nondischargeable judgment in the amount of $1,347.90 on the underlying debt but left the amount of attorney's fees to the Court's determination. Adv. Dkt. No. 31. Pikco requests $5,465.00, including $5,080.00 in fees and $385.00 in expenses. Adv. Dkt. No. 20 at 4. The fee itemization attached to Pikco's application shows that its attorneys billed 32.90 hours on this adversary. Adv. Dkt. No. 20–1 at 5. Four individuals appear on the itemization, but the rate for all billing parties other than Stacey Moore Buchanan is $0.00 per hour. The rate billed for the services rendered by Buchanan is $200.00 per hour. *See* Adv.

Dkt. No. 20–1. The promissory note between Staten and Pikco provides the basis for the Court's award of reasonable attorney's fees. It states:

DEFAULT, ACCELERATION, AND POST MATURITY INTEREST: Upon default by Borrower (1) Lender may (i) bring suit for the delinquent payments without accelerating the remaining balance and/or (ii) with or without notice to Borrower, declare the remaining balance immediately due and payable, less any rebate of unearned Finance Charges as provided for above, and (2) Borrower shall pay all of Lender's attorney's fees and Lender's legal expenses, whether or not there is a lawsuit, including attorney's fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction, and actions to object to discharge and/or dischargeability), and appeals.

Adv. Dkt. No. 1–1 at 2. According to Pikco's proof of claim, Staten was $114.00 in arrears at the time of filing. Claim 6–2 at 1.

Pikco argues that the fees it seeks are reasonable. Staten argues that the requested fees are excessive considering the factors for reasonableness, especially the amount of the underlying debt. Adv. Dkt. No. 21 at 1. Staten further argues that the fee award should be reduced to "one third of the debt which is reasonable plus any expenses incurred." Adv. Dkt. No. 21 at 3.

### III. Conclusions of Law

Although "the Bankruptcy Code does not expressly award attorney's fees to a creditor who successfully contests the dischargeability of his claim[,] ... creditors are entitled to recover attorney's fees in bankruptcy claims if they have a con-

---

1. Pursuant to Federal Rule of Civil Procedure 52, made applicable to this adversary by Federal Rule of Bankruptcy Procedure 7052, the following constitutes the findings of fact and conclusions of law of the Court.

tractual right to them valid under state law." *Jordan v. Se. Nat'l Bank (In re Jordan)*, 927 F.2d 221, 226–27 (5th Cir. 1991) (internal quotation marks omitted), *overruled on other grounds by Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257, 260–61 (5th Cir. 1993). Where an award of attorney's fees is based on substantive state law, then state law governs the reasonableness of that award. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) ("State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision.") Because Pikco's entitlement to fees is based on a contract governed by Mississippi law, the Court will apply Mississippi law to determine whether the requested fees are reasonable. In most cases in Mississippi, whether state or federal law applies is a distinction without a difference because the lodestar method and *Johnson*[2] factors applied by federal courts are "almost identical" to those applied by the Mississippi Supreme Court and codified in Rule 1.5 of the Mississippi Rules of Professional Conduct. *See Mauck v. Columbus Hotel Co.*, 741 So.2d 259, 272 (Miss. 1999); *Ill. Cent. R.R. Co. v. Harried*, No. 5:06cv160, 2011 WL 283925, at *7 (S.D. Miss. Jan. 25, 2011) (holding that "though

Mississippi law governs the amount of the fee award here, because the factors considered under state and federal law are nearly identical, both state and federal cases are instructive").

■ The Mississippi Code provides that

> In any action in which a court is authorized to award reasonable attorneys' fees, the court shall not require the party seeking such fees to put on proof as to the reasonableness of the amount sought, but shall make the award based on the information already before it and the court's own opinion based on experience and observation; provided however, a party may, in its discretion, place before the court other evidence as to the reasonableness of the amount of the award, and the court may consider such evidence in making the award.[3]

Miss. Code Ann. § 9–1–41 (1990).[4] The "proper procedure" for determining a reasonable award of attorney's fees in Mississippi is to determine a "reasonable fee, based on the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate" then "consider[ ] the eight factors enumerated in [Mississippi] Rule[5] 1.5 . . . ." *In re Estate of Gillies*,

---

**2.** *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) *abrogated in part by Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (holding that contingency fee contract did not cap award of attorney's fees where *Johnson* had so held).

**3.** *But see Speights v. Speights*, 126 So.3d 76, 82 (Miss. Ct. App. 2013) ("[W]here there are many billable hours that the court is unable to observe or lacks knowledge of, it is incumbent upon the party requesting fees to place before the court evidence as to the reasonableness of the amount of the award, so that the record as a whole can support the award of attorney's fees."). The Court's local rules require attorneys requesting fees to submit itemiza-

tions and supporting affidavits with any fee request. *See* Miss. Bankr. L.R. 7054–1(b)(2)(A)–(B). It is a rare case where this Court will not require that the local rule be followed because few hours that attorneys bill in nondischargeability actions are spent in front of the Court.

**4.** This statute applies to cases where the basis for an award of attorney's fees is contractual, not just where the fee award is statutory. *See, e.g., Philips Med. Capital, LLC v. P & L Contracting, Inc.*, No. 2:10cv092, 2012 WL 860324, at *4 (N.D. Miss. Mar. 13, 2012).

**5.** For convenience, references to the Mississippi Rules of Professional Conduct are shortened to "Mississippi Rule ——".

830 So.2d 640, 646 (Miss. 2002). Those factors are:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

Miss. R. Prof'l Conduct 1.5(a). A trial court must support any award with "findings of fact and conclusions of law," though individual consideration of each factor has never been specifically required. *See Bell-South Pers. Commc'ns, LLC v. Bd. of Supervisors of Hinds Cnty.*, 912 So.2d 436, 446 (Miss. 2005) (quoting *Miss. Power & Light Co. v. Cook*, 832 So.2d 474, 487 (Miss. 2002)). Consideration of the factors need not be taken in a particular order.

### A. The Reasonable Fee / Lodestar

■ Counsel for Pikco has included 32.90 billed hours in the fee itemization. Some of the entries are billed at $0.00 per hour, and counsel voluntarily reduced the bill by $400.00 or two hours billed at Buchanan's rate. After review of the itemization, the Court finds that Buchanan is seeking payment for 25.4 hours. The Court further finds that Buchanan's rate of $200.00 is reasonable.[6] Therefore, the lodestar amount is $5,080.00 (25.4 times $200.00). The Court now turns to the Mississippi Rule 1.5 factors to see whether the amount should be reduced or increased.

### B. The Mississippi Rule 1.5 Factors

■ The Court finds that the fourth, third, and first factors, when considered together, merit a substantial reduction in the amount of the award and analyzes those factors first. The remaining factors, though analyzed, contribute little to the Court's decision and do not merit a change in the fee awarded.

*Fourth Factor: The Amount Involved and the Results Obtained*

■ Pikco filed a proof of claim in the amount of $1,347.90. Claim 6–2. Ultimately, Staten agreed that the entire claim amount would be nondischargeable. Successful representation in and of itself does not justify an increase in the base fee because "the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as [an] independent bas[i]s for increasing the basic fee award." *Mauck*, 741 So.2d at 272 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)). Further, the underlying claim amount involved in this litigation is relatively small. Other courts applying this identical factor from *Johnson* have held that an attorney's fee "almost double" the

---

6. "The 'reasonable hourly rate' for the lodestar calculation is 'calculated according to the prevailing market rates in the relevant community' and must be 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Idom v. Natchez–Adams Sch. Dist.*, No. 5:14cv38, 2016 WL 320954, at *3 (S.D. Miss. Jan. 25, 2016) (quoting *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011)).

amount in dispute was excessive. *Drift-wood Manor Owners Ass'n v. Borgus (In re Borgus)*, 544 B.R. 315, 325 (Bankr. E.D.N.C. 2016) ("The court cannot find any basis upon which to justify a fee award that is so much larger than the underlying debt."); *see also Meeks v. State Farm Mut. Auto. Ins. Co.*, 460 F.2d 776, 780 (5th Cir. 1972) ("The amount of the district court's award is nearly eighty per cent of the amount of [the] recovery. Without minimizing the complexity of the issues, both of law and fact, we think it might well be said that, measured by the amount involved, the fee allowed is more than the traffic should bear."); *Adams v. Hernandez (In re Hernandez)*, Bankr. No. 13-12479, 2014 WL 2609795, at *7 (Bankr. D. Colo. June 11, 2014) (finding that billing "nearly 20 hours to demonstrate damages of $3,500.00 . . . result[ed] in a fee that is high in relation to the amount reasonably at issue under a nondischargeability theory and the results obtained"). Additionally, compelling Mississippi case law suggests that the award of attorney's fees should rarely exceed the amount of the recovery, regardless of the work actually per-formed.[7] *See Cox v. Howard, Weil, La-bouisse, Friedrichs, Inc.*, 619 So.2d 908, 915 (Miss. 1993) (fee for recovery under open account statute and for defense of counterclaim which was greater than jury award "appeared to be excessive").

The agreed amount of the underlying debt is $1,347.90 and the fee request is nearly quadruple that amount. The Court finds no basis to justify an award of fees so much greater than the amount recovered. This factor merits a 75% reduction in the fees, especially when the third and first factors are also considered. The lodestar amount is reduced to $1,270.00.

*Third Factor: The Fee Customarily Charged in the Locality for Similar Legal Services*

■ Staten argues that the customary fee for actions of this type is one-third of the amount of the indebtedness.[8] Adv. Dkt. Nos. 21 at 2, 27 at 5–6. This has been the experience of the Court. In previous suits for nondischargeability for small consumer loans, the Court has awarded attorney's fees in the amount of one-third of the debt. *See, e.g., Pikco Fin., Inc. v. Crumedy (In*

---

7. Cases awarding fees in excess of the recovery pursuant to federal civil rights fee-shifting statutes carry no weight here. *See Wal–Mart Stores, Inc. v. Qore, Inc.*, 647 F.3d 237, 248 (5th Cir. 2011) (holding that a case awarding fees under 42 U.S.C. § 1988 "has no application in [a] private claim for attorney's fees sounding in Mississippi contract law"). Those fee awards are predicated on "particular legislative intent to encourage private enforcement" of civil rights guaranteed by the Constitution. *Id.* at 247. This case involved no important constitutional or policy issues.

8. As part of her argument, Staten points to the standard fee in collection actions. The Mississippi Supreme Court has "traditionally approved as reasonable awards of attorneys' fees in collection matters in the amount of one-third of the indebtedness" finding that a "fee in that amount is fairly standard in collection practice." *Dynasteel Corp. v. Aztec Indus., Inc.*, 611 So.2d 977, 986 (Miss. 1992). In awarding attorney's fees in a collection action, the court substitutes the lodestar amount for one-third of the indebtedness because that amount is a presumptively reasonable fee. *Id.* That presumption may be rebutted by application of the factors from Mississippi Rule 1.5. *Id.* Several of the cases addressing the standard fee involved issues more complicated than this case. *See, e.g., Shackelford v. Cent. Bank of Miss.*, 354 So. 2d 253, 254–55 (Miss. 1978) (awarding fees in amount of one third of debt in collection matter involving personal jurisdiction dispute); *Cox*, 619 So.2d at 912–15 (awarding one-third fees in collection matter involving question whether contract mandated arbitration). Even if the Court were to rely on *Dynasteel*, and use one-third as a starting point, Pikco has established that it would be entitled to an increase under Mississippi Rule 1.5 because of the initial discovery it had to undertake to file its complaint. *See* Adv. Dkt. No. 25 at 1–2.

*re Crumedy)*, Bankr. No. 13-50513, 2014 WL 4352066, at *5 (Bankr. S.D. Miss. Sept. 2, 2014) (awarding attorney's fees of "33 1/3% of the unpaid balance of the loan" pursuant to promissory note and security agreement on successful nondischargeability action); *Country Credit, LLC v. Tillman (In re Tillman)*, Bankr. No. 11-04315, 2012 WL 5993712, at *5 (S.D. Miss. Nov. 30, 2012) (same); *Country Credit, LLC v. Kornegay (In re Kornegay)*, Bankr. No. 11–00067, 2012 WL 930818, at *4 (S.D. Miss. Mar. 19, 2012) (same); *cf. Barvié v. Broadus (In re Broadus)*, Bankr. No. 12–52517, Adv. No. 13–05002, slip op. at 7 (Bankr. S.D. Miss. Mar. 9, 2016) (awarding fees slightly more than one-third of amount recovered where fee entitlement came from loan agreement but agreement did not limit fee to percentage); *Westwood Square Ltd. P'ship v. Broome (In re Broome)*, Bankr. No. 11–50528, Adv. No. 11–05047, slip op. at 2 (Bankr. S.D. Miss. Mar. 6, 2014) (awarding slightly less than one-third of amount under similar contract provision).[9] This factor also supports a reduction in the amount of the fee. However, in light of the reduction made above, no further reduction will be taken.

*First Factor: The Time and Labor Required, the Novelty and Difficulty of the Questions Involved, and the Skill Requisite to Perform the Legal Service Properly*

 The Court finds that the questions presented were not novel or difficult. The Court further finds that "nothing in the record indicates that the nature of the litigation involved in this adversary proceeding varies drastically from the average bankruptcy-related representation undertaken by" Buchanan. *Schermerhorn v. CenturyTel, Inc. (In re Skyport Global Commc'ns, Inc.)*, 450 B.R. 637, 654 (Bankr. S.D. Tex. 2011). Most of the time billed was for discovery conducted after settlement negotiations failed. However, discovery must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Bankr. P. 7026 (adopting this rule for adversary proceedings).[10] Parties are to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26 (b)(1).

 At the time of the settlement negotiations, Pikco had questioned the debtor at the Section 341 meeting, reviewed proofs of claim filed by other creditors, served subpoenas on and reviewed documents from creditors listed in Staten's schedules. It had discovered what it needed to support its claim. As Pikco noted in its rebuttal, it had already spent more than the amount of the debt pursuing the debt

---

**9.** Pikco previously used a standard contract that provided that Pikco would receive "one third attorneys fees for any litigation." Adv. Dkt. No. 21 at 1. Other finance companies in Mississippi have also included a one-third cap on the attorney's fee provisions in their loan contracts. *See* Paul Kiel, *When Lenders Sue, Quick Cash Can Turn Into a Lifetime of Debt*, ProPublica (August 10, 2016, 4:10 PM), https://www.propublica.org/article/when-lenders-suequick-cash-can-turn-into-a-lifetime-of-debt (stating that Tower Loan's "loan contracts specify that if the company is

required to sue to collect, it is entitled to a reasonable attorney's fee of 33 1/3% of the amount delinquent" (internal quotation marks omitted)).

**10.** The rule was amended during the pendency of this case to reinforce the necessity of considering the proportionality of discovery, but it "d[id] not change the existing responsibilities of the court and the parties to consider proportionality." Fed. R. Civ. P. 26 advisory committee's note on 2015 amendment.

at the time that the settlement negotiations fell apart. Dkt. No. 25 at 2. Yet when the parties could not agree on the amount of contractual attorney's fees, Pikco served interrogatories, requests for admissions, and document requests on Staten. Dkt. No. 9. At this point, Pikco's discovery was no longer proportional to the needs of the case. The parties should have then, as they eventually did, submitted the question of attorney's fees to the Court rather than needlessly drive up the fees by continuing to litigate. A contractual provision to pay attorney's fees is not a blank check; it is limited by the reasonableness of the fee which includes an analysis of whether work performed was actually necessary. *Cf. In re 900 Corp.*, 327 B.R. 585, 594 (Bankr. N.D. Tex. 2005) ("The purpose of the reasonableness requirement of section 506(b) is to ensure that a creditor is not given a blank check to incur attorneys' fees which will be reimbursed out of its collateral." (internal quotation marks omitted)). "If proper restraint is not exercised, the costs of any 'overlawyering' should be borne by the Creditor, rather than Debtors." *Id.* (quoting *In re Center*, 282 B.R. 561, 567 (Bankr. D.N.H. 2002)).

This factor also supports a reduction in the amount of the fee. However, in light of the reduction made above, no further reduction will be taken.

*Second Factor: The Likelihood, if Apparent to the Client, that the Acceptance of the Particular Employment will Preclude Other Employment by the Lawyer*

■ It is the Court's experience that Buchanan regularly represents Pikco before this Court. "Typically, preclusion of employment presumes that an attorney does not generally engage in the sort of representation for which fees are being requested and, therefore, is prevented from undertaking a customary amount of additional work due to the increased time demand of that particular case." *In re*

*Skyport Global Commc'ns*, 450 B.R. at 653–54 (citing *In re El Paso Refinery, L.P.*, 257 B.R. 809, 826 n.30 (Bankr. W.D. Tex. 2000)). "The professionals involved in this litigation may have been precluded from commencing representation of other clients, but such preclusion is simply due to the natural limitations on billable hours. ..." *Id.* at 654. Consequently, this factor does not merit any change to the base fee award.

*Fifth Factor: The Time Limitations Imposed by the Client or by the Circumstances*

The Court is aware of no unusual time limitations in this case imposed by either Pikco or the circumstances of the case justifying a change in the lodestar. "Time limitations are part and parcel of all bankruptcy representation, so its consideration adds nothing to the analysis." *In re El Paso Refinery*, 257 B.R. at 826 n.30.

*Sixth Factor: The Nature and Length of the Professional Relationship with the Client*

■ As stated above, Buchanan and her law firm have a long standing relationship with Pikco. Counsel for Pikco argues that this "enabled [them] to handle this case more efficiently than if it were the only case of this nature handled by counsel." Adv. Dkt. No. 20 at 3–4. While this may be true, the Court finds that that does not justify an increase in the lodestar. *See Wells Fargo Equip. Fin., Inc. v. Beaver Constr., LLC*, No. 6:10–0386, 2011 WL 5525999, at *4 (W.D. La. Oct. 18, 2011) (finding that long standing professional relationship with client was adequately compensated in the lodestar amount).

*Seventh Factor: The Experience, Reputation, and Ability of the Lawyer or Lawyers Performing the Services*

■ Buchanan and her law firm are known to this Court and within the local

bankruptcy bar as well qualified attorneys and practitioners, who regularly bring suits for nondischargeability on behalf of their clients. As the Fifth Circuit has held, this factor is generally already reflected in the lodestar amount and will only merit an increase in the "rare and exceptional" case. *TransAmerican Natural Gas Corp. v. Zapata P'ship, Ltd. (In re Fender)*, 12 F.3d 480, 488 (5th Cir. 1994). This case is neither rare nor exceptional.

*Eighth Factor: Whether the Fee is Fixed or Contingent*

The Court does not know how much Buchanan was paid by Pikco because her contract with the creditor is not before the Court. *See Jack Cole–Dixie Hwy. Co. v. Red Ball Motor Freight, Inc.*, 254 So.2d 734, 741 (Miss. 1971) ("It would be a mistake ... to allow an attorney to recover not only the amount agreed upon with his client under the employment contract but also an additional amount based upon the value of a services actually necessary to the recovery."). But even were that information known, the Court would find this factor irrelevant to its analysis. *See In re Skyport Global Commc'ns*, 450 B.R. at 653 (finding this factor to be irrelevant in a typical bankruptcy action). The fee arrangement in this case is neither fixed nor contingent because it was not established as between Pikco and its counsel but rather by a separate contract between Pikco and Staten.

C. Expenses Requested

Having fully examined the fee itemization, the Court turns to the expenses requested. Pikco requested $385.00 in expenses, which are included as a separate category in the fee itemization. Adv. Dkt. No. 20–1 at 5. Staten did not challenge the claimed expenses in her objection, and the Court finds the expenses listed are reason-able. Accordingly, the Court finds that Pikco is entitled to the full amount of expenses requested.

IV. Conclusion

Having considered the Mississippi Rule 1.5 factors and the lodestar amount, the Court finds that Pikco is entitled to collect $1,270.00 in attorney's fees and $385.00 in expenses for a total award of $1,655.00. This amount shall be added to the debt Staten owes Pikco, which the parties previously agreed to be nondischargeable in the amount of $1,347.90. *See In re Jordan*, 927 F.2d at 226–28 (holding that where party has contracted to pay attorney's fees for collection of nondischargeable debt, attorney's fee award also will not be discharged in bankruptcy). Accordingly, the total nondischargeable debt Staten owes Pikco is $3,002.90.

**IT IS HEREBY ORDERED AND ADJUDGED** that the relief sought in the Complaint (Adv. Dkt. No. 1) is **GRANTED** and the debt Terri Denise Staten owes Pikco Finance, Inc. is nondischargeable in the amount of $1,347.90.

**FURTHER ORDERED AND ADJUDGED** that Pikco Finance, Inc.'s request for attorney's fees and costs is **GRANTED IN PART** in the amount of $1,655.00 for a total nondischargeable judgment in the amount of $3,002.90, together with interest thereon from the date of the entry of this Final Judgment at the rate provided in 28 U.S.C. § 1961.

**SO ORDERED.**